IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERICK C. CARTER, *et al.,* | ) | Case No.:  3:05-CV-7427 |
| | ) | |
| Plaintiffs, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR CLASS CERTIFICATION** |
| WELLES-BOWEN REALTY, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

James S. Timmerberg (0067499)
John T. Murray (0008793)
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Post Office Box 19
Sandusky, Ohio  44871-0019
Telephone:     (419) 624-3000
Facsimile:     (419) 624-0707

John L. Huffman (0039658)
Mickel & Huffman
520 Madison Ave., Suite 520
The Spitzer Building
Toledo, Ohio  43604-1351
Telephone:  (419) 242-8461
Facsimile:   (419) 242-6866

Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..iii

I.      SUMMARY OF THE ARGUMENT……………………………………...….…..…1

II.     STATEMENT OF THE ISSUE TO BE DECIDED…………………………….…..3

III.    STATEMENT OF FACTS ………………………………………………....……3

        A.      WB Title Was Created as a Vehicle for Funneling
                Kickbacks From Chicago Title to the Owners of WB Realty…………..…….3
…
        B.      WB Title Is Entirely Dependent on Chicago
                Title for Management of Its Office and Performance
                of Its Title Work……………………………………………………....…4

        C.      WB Title Is a Sham Title Agency …………………………………..…..6

        D.      All of the Plaintiffs Are Similarly Situated and Their
                Damages Are Easily Calculated.  ……………………………………8

IV.     LEGAL ANALYSIS……………………………………………………..……9

        A.      CLASS DEFINITION…………………………………………………...…9

        B.      GENERAL PRINCIPLES OF CLASS CERTIFICATION……………………10

                1.      The Underlying Rationale for Class Actions
                        Supports Class Certification…………………………….…………10

                2.      The Allegations in the Complaint Must Be
                        Accepted as True……………………………………………………10

                3.      Inquiry into the Merits of the Underlying
                        Action is not Permitted at the Class Action
                        Certification Stage……………………………………….………11

                4.      A Trial Court Has Broad Discretion in
                        Determining Whether to Certify an Action as a Class Action………......11

        C.      THE REQUIREMENTS OF FED.R.CIV. P. 23(a)
                ARE SATISFIED………………………………………………….…....11

                1.      Numerosity – Fed.R.Civ.P. 23……………………………….......12

    2.     Commonality – Fed.R.Civ.P. 23 (a)(2)……………………………….....12

    3.     Typicality – Fed.R.Civ.P. 23 (a)(3)…………………………....……....13

    4.     Adequacy of Representation – Fed.R.Civ.P. 23 (a)(4)………...…….…14

D.     THE REQUIREMENTS OF RULE 23(b)(1)(A), 23(b)(3),
and 23(b)(2) ARE SATISFIED………………………………………….....…15

    1.     The proposed class satisfies the requirements
of Rule 23 (b)(1)(A)……………………………………………………...15

    2.     The proposed class satisfies the requirements
of  Rule 23(b)(3……………………………………………………….…16

    3.     The proposed class also satisfies the requirements
of Rule 23 (b)(2)……………………………………………………...…18

V.  CONCLUSION…………………………………………………………….……..19

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor* (1997), 521 U.S. 591, 617 ........................................................ 10

*Bentley v. Honeywell International Inc.*, 223 F.R.D. 471, 484 (S.D. Ohio 2004) ........................ 13

*Cervantes v. Sugar Creek Packing Co., Inc.,* 210 F.R.D. 611, 619-20 (S.D.Ohio 2002) .............. 9

*Cervantes v. Sugar Creek Packing Co., Inc.,* 210 F.R.D. 611, 628 (S.D.Ohio 2002) ................. 19

*Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 696 N.E.2d 1001. ........................................... 15

*Eisen v. Carisle & Jacqueline*, 417 U.S. 156, 177-78 (1974) ...................................................... 11

*In re Revco Securities Litigation*, 142 F.R.D. 659, 662 (N.D. Ohio E.D. 1992) ......................... 10

*Kahrer v. Ameriquest Mortgage Company,* 418 F.Supp.2d 748, 756 (W.D.Pa.2006) ................. 8

*Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) .............................................. 14

*Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 579 (S.D. Ohio 1993) .................................... 11

*Mayo v Sears, Roebuck &Co.,* 148 F.R.D. 576, 582 (S.D. Ohio 1993) ....................................... 15

*Thompson v. Community Insurance Co.,* 213 F.R.D. 284, 291 (S.D. Ohio 2002) ........................ 11

*Violette v. P.S. Days*, 214 F.R.D. 207, 211 (S.D. Ohio 2003) ..................................................... 11

*Violette v. P.A. Days*, 214 F.R.D. 207, 212 (S.D. Ohio 2003) .................................................... 12

*Violette v. P.A. Days*, 214 F.R.D. 207, 214 (S.D. Ohio 2003) .................................................... 13

*Walther v. Pension Plan for Salaried Employees of the Dayton-Walther Corp.*, 880 F.Supp.
    1170, 1176 (S.D. Ohio 1994) ............................................................................................... 11

*Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, (1988) ............................................................... 15


**Secondary Authority**

2 NEWBERG ON CLASS ACTIONS § 4:8  (4th ed. 2002) ......................................................... 15, 16

2 NEWBERG ON CLASS ACTIONS § 4:25 (4th ed. 2002) ............................................................... 16

2 NEWBERG ON CLASS ACTIONS § 4:27 (4th ed. 2002) ............................................................... 17

2 NEWBERG ON CLASS ACTIONS § 4:32 (4th ed. 2002) ............................................................... 18


**Rules**

Fed.R.Civ.P.23(b)(1)(a) ................................................................................................................ 2

Fed.R.Civ.P. 23(b)(3) ......................................................................................................... 2, 15,19

Fed.R.Civ.P. 23(b)(2) .............................................................................................. 2, 15, 18, 19

Fed.R.Civ.P. 23(a) .................................................................................................................. 11, 19

Fed.R.Civ.P. 23(a)(1) .................................................................................................................. 12

Fed.R.Civ.P. 23(a)(2) .................................................................................................................. 12

Fed.R.Civ.P. 23(a)(3) .................................................................................................................. 13

Fed.R.Civ.P. 23(a)(4) ............................................................................................................. 14, 15


**Statutes**

12 U.S.C. Chapter 27 ..................................................................................................................... 1

12 U.S.C. § 2607(a) and (b) .......................................................................................................... 2

12 U.S.C. § 2607(d)(2) ....................................................................................................... 2, 8, 16

12 U.S.C. § 2607(a) ....................................................................................................................... 3

## I.       SUMMARY OF THE ARGUMENT

Defendants Chicago Title Insurance Company ("Chicago Title") and Welles Bowen Investors, LLC ("WB Investors") created Defendant Welles Bowen Title Agency, LLC ("WB Title"), a sham title company, for the purpose of generating kickbacks from Chicago Title to the owners of Defendant Welles-Bowen Realty, Inc. ("WB Realty").

WB Title is a title agency that provides no substantive services to its clients.  It does not perform title searches, it does not serve as an escrow agent and it does not perform closings.  Its only function is to perform title examinations, a service on which the owners of WB Title have placed a value of $25. In return for its $25 worth of work, it receives more than 50% of the funds paid for title insurance work on any real estate closing in which it is involved.  Its profits are divided between WB Investors and Chicago Title.

The owners of WB Investors are also the owners of WB Realty, which strongly encourages its agents to refer their clients to WB Title. WB Realty also refuses to permit other title agencies to advertise in its offices. Because Chicago Title does substantially all of the work related to the issuance of the title insurance policy, the funds received by WB Investors from WB Title (approximately 49% of its profits) are kickbacks that Chicago Title pays to the owners of WB Realty in return for a commitment from WB Realty to refer as many of its clients as possible to WB Title.

This arrangement is a violation of 12 U.S.C. Chapter 27 ("Real Estate Settlement Procedures Act" or "RESPA"), which prohibits kickbacks and unearned fees with respect to real estate settlement services involving a federally related mortgage loan.  WB Title and Chicago Title provided such settlement services to each of the potential class members in this matter. And kickbacks and unearned fees were paid by Chicago Title to the other defendants in return for

referrals of work.  Because the defendants violated RESPA, they are jointly and severally liable to the plaintiffs in an amount equal to three times the amount the plaintiffs paid for the settlement services provided by the defendants.[1]

This matter is appropriate for class certification for the following reasons:

- There are more than 600 potential class members.[2]

- The conduct of the defendants toward the class members was uniform, with the central issue in all of the claims involving a determination of whether WB Title is a sham title agency.

- Individual issues are nonexistent.

- The named plaintiffs' claims arise from the same illegal kickback scheme that gives rise to the claims of all the class members, and are premised on violations of the same sections of the U.S. Code, 12 U.S.C. § 2607(a) and (b).

- Certification under Rule 23(b)(1)(A) is appropriate because the defendants were required to deal with all of the class members in the same way, i.e., they were prohibited from operating a sham title agency for the purpose of generating kickbacks for the owners of WB Realty.

- Certification under Rule 23 (b)(3) is appropriate because: (1) a common question predominates -- whether WB Title is a sham title agency designed to generate kickbacks; and (2) a class action is superior to other methods for fair and efficient adjudication of the controversy.

- Certification under Rule 23 (b)(2) is appropriate because: (1) the defendants acted on grounds generally applicable to the class, i.e., they operated a sham title agency; and (2) injunctive relief requiring the defendants to comply with RESPA would be appropriate.

---

[1] 12 U.S.C. § 2607(d)(2).

[2] Kajfasz depo 71:9-17, App. 1.  (WB Title served as the title agent for more than 300 transactions in 2006, with each of those transactions involving two parties.)

II.     **STATEMENT OF THE ISSUE TO BE DECIDED**

Is class certification appropriate in a case in which the class consists of approximately 600 customers of a sham title agency that was established by the defendants Chicago Title and WB Investors so that Chicago Title, in violation of RESPA, could provide kickbacks and/or unearned fees to the owners of defendant WB Realty in return for referrals of title work.

III.    **STATEMENT OF FACTS**

   A.  **WB Title Was Created as a Vehicle for Funneling Kickbacks From Chicago Title to the Owners of WB Realty.**

The purpose of establishing WB Title was for the owners of WB Realty and Chicago Title to capture a stream of income from the title work related to the real estate transactions generated by WB Realty's agents.  Prior to the creation of WB Title, referrals of title work by WB Realty's agents did not generate any income for the owners of WB Realty. Whatever perks the title agencies provided to the agents of WB Realty in return for referrals were retained by those agents and not passed on to the owners of WB Realty.

The simplest way for WB Realty to generate profits for referring title work to Chicago would have been for Chicago Title to pay referral fees directly to WB Realty. But such a scheme would have been a blatant violation of RESPA, which prohibits the payment of fees for referrals.[3]

Alternatively, the owners of WB Realty could have cut Chicago Title out of the picture and established their own, full-service title agency. But this would have been an expensive, and, in all likelihood, money-losing proposition.  Consequently, a compromise solution was arrived at. The owners of WB Realty, in conjunction with Chicago Title, created a sham title agency. The structure of the scheme is as follows: Chicago Title owns 50.1% of WB Title and WB

---

[3] 12 U.S.C. § 2607(a).

Investors own 49.9%.[4]  WB Investors is owned by Kevin Smith and David Browning, who also

own WB Realty.[5] Although all of the actual title work is performed by Chicago Title, WB Title's

cash distributions are determined according to the members' proportionate interests,[6] which

means that approximately 49.9% of WB Title's profits are ultimately distributed to the owners of

WB Realty in their capacity as members of WB Investors.

Chicago Title benefits from the scheme because it is guaranteed a steady stream of

indirect referrals from agents of WB Realty. The referrals are indirect because the WB Realty

agents refer their customers to WB Title, which in turn asks Chicago Title to perform the title

search and the closing. These fees are paid directly to Chicago Title by the buyer and the seller.

And, of course, Chicago Title also receives a portion of WB Title's profits as its majority owner.

### B. WB Title Is Entirely Dependent on Chicago Title for Management of Its Office and Performance of Its Title Work.

WB Title is not staffed as a full-service title agency, and does not offer standard title

agency services. WB Title has only two employees.[7] WB Title does not employ any title

abstractors,[8] or escrow officers.[9] This means that it does not conduct title searches or closings. In

Lucas County, Chicago Title performs all of WB Title's abstract work[10] and provides escrow

---

[4] Operating Agreement of WB Title, P's Ex. 4, App. 2. Fidelity National Financial, Inc. ("FNF") is the majority shareholder of Fidelity National Title Group, Inc, which wholly owns Chicago Title and Trust Company, which wholly owns Chicago Title Insurance Company, which purchased Northwest Title of Ohio and Michigan in January 2000. Chicago Title's Answers and Objections to Plaintiffs' First Set of Discovery Requests, Interrogatory No. 9, App. 3.

[5] WB Title's Business Entity Title License Application, P's Ex. 3, App. 4; Admission of Chicago Title as a substitute member, P's Ex. 6, App. 5. (Northwest Title Agency of Ohio and Michigan, Inc. was a founding member of WB Title. Northwest Title was purchased by Chicago Title, which replaced it as a member of WB Title.)

[6] Operating Agreement of WB Title, P's Ex. 4, Bates No. CT 0018, App. 2.

[7] Kajfasz depo at 68:13-23, App. 1.

[8] *Id.* 20:21-22, App. 1.

[9] *Id.* at 40:14-17, App. 1.

[10] *Id.* at 64:14-17, App. 1.

services for all of the WB Title transactions.[11] Also, WB Title can only issue title assurances of Chicago Title.[12]

Chicago Title not only does all of WB Title's work, it also runs its office:

- WB Title subleases its office space from Chicago Title pursuant to a verbal sublease.[13]

- WB Title does not handle its own payroll. Instead, WB Title employees are paid by Fidelity National Financial ("FNF"), the parent company of Chicago Title.[14] WB Title then reimburses FNF.[15]

- WB Title's employees receive their health insurance through FNF.[16]

- Chicago Title pays WB Title's rent, utility bills, postage, copying costs and other miscellaneous expenses, and then seeks reimbursement from WB Title.[17]

WB Title makes no effort to compete in the open marketplace for title work. When asked to identify all of WB Title's customers who had not been referred to it by an agent of WB Realty, WB Title produced a list of only 14 such customers since its inception.[18] In 2006 alone, WB Title served as the title agent in more than 300 transactions.[19] In other words, more than 90% of WB Title's customers are direct or indirect referrals from WB Realty. This is unlikely to change soon: although WB Title had gross profits of more than $500,000 in 2005,[20] it invested only $6,000 in marketing.[21]

---

[11] *Id.* at 97:20-25, App. 1.
[12] Chicago Title Issuing Agency Contract, P's Ex. 5, App. 6; Kajfasz depo 51:23-52:5, App. 1.
[13] Kajfasz depo 109:11-18, App. 1; WB Title's Response to Plaintiff's Request to Produce No. 4, App. 7.
[14] Kajfasz depo 100:7-12, App. 1.
[15] *Id.* at 100:7-12, App. 1.
[16] *Id.* at 151:21-152:1, App. 1.
[17] Kajfasz depo at 109:10-13, App. 1.
[18] WB Title Customer List, P's Ex. 8, App. 8; WB Title's Response to Plaintiff's Interrogatory No. 3, App. 7.
[19] Kajfasz depo at 71:9-17, App. 1.
[20] WB Title Statement of Income for 2005, P's Ex. 14, Bates No. CT 0109, App. 9.
[21] Kajfasz depo 89:24-90:3, App. 1.

### C.  WB Title Is a Sham Title Agency.

The Department of Housing and Urban Development has identified 10 factors to be considered in determining whether a title agency is a sham entity, or a bona fide provider of settlement services.[22] The following factors support the plaintiffs' conclusion that WB Title is a sham title agency:

"(2) Is the new entity staffed with its own employees to perform the services it provides? Or does the new entity have 'loaned' employees of one of the parent providers?" Comment: Patricia Kost, WB Title's title examiner and underwriter, was an employee of Chicago Title prior to joining WB Title. She continues to be paid by and receive health insurance through Chicago Title's parent, FNF. In fact, she continues to work at the same address, simply in a different room. She also continues to report to Michael Kajfasz, the manager of Chicago Title's Toledo office.[23]

"(3) Does the new entity manage its own business affairs? Or is an entity that helped create the new entity running the new entity for the parent provider making the referrals?" Comment: Chicago Title manages all of WB Title's business affairs, including payroll, the rental of office space, the provision of supplies, the payment of utilities, etc.[24]

"(4) Does the new entity have an office for business which is separate from one of the parent providers? If the new entity is located at the same business address as one of the parent providers, does the new entity pay a general market value rent for the facilities actually furnished?" Comment: WB Title rents its office space from Chicago Title in the same building and on the same floor as Chicago Title. Because WB Title is a sham operation, the parties did not bother to draft a written lease agreement.

---

[22] Statement of Policy 1996-2 Regarding Sham Controlled Business Arrangements, App. 10.
[23] Kajfasz depo at 66:12-25; 7:4-6, App. 1.
[24] Kajfasz depo at 100:7-12, 109:10-13, App. 1.

"(5) Is the new entity providing substantial services, i.e., the essential functions of the real estate settlement service, for which the entity receives a fee? Does it incur the risks and receive the rewards of any comparable enterprise operating in the market place?" Comment: WB Title does not perform the essential functions of a title agency. It does not perform title searches, provide escrow services, or conduct closings. In connection with the Carters' purchase of their home, the defendants have not produced a single document that demonstrates that WB Title performed any work with respect to the transaction that rises above the level of a clerical function.

"(6) Does the new entity perform all of the substantial services itself? Or does it contract out part of the work?  If so, how much of the work is contracted out?" Comment: WB Title claims to perform a title examination. The defendants have determined that the value of this service is $25.[25]  The rest of the title services are performed by Chicago Title.

"(7) If the new entity contracts out some of its essential functions, does it contract services from an independent third party? Or are the services contracted from a parent, affiliated provider or an entity that helped create the controlled entity? If the new entity contracts out work to a parent, affiliated provider or an entity that helped create it, does the new entity provide any functions that are of value to the settlement process?" Comment: WB Title arranges for Chicago Title to perform the necessary title searches and provide escrow and closing services.[26] WB Title does not contract services from an independent third party. The only function of value that WB Title claims to provide is a title examination, which the defendants themselves have valued at $25.

---

[25] *Id.* at 142:11-143:4, App. 1.
[26] *Id.* at 64:14-27, 97:20-25, 142-11-143:4, App. 1.

"(9) Is the new entity actively competing in the market place for business? Does the new entity receive or attempt to obtain business from settlement service providers other than one of the settlement service providers that created the new entity?" Comment: At least 90% of WB Title's business is generated by referrals from agents of WB Realty. It has dedicated only $6,000 per year to its marketing budget.

"(10) Is the new entity sending business exclusively to one of the settlement service providers that created it …? Or does the new entity send business to a number of entities, which may include one of the providers that created it?" Comment: WB Title is contractually obligated to issue title assurances exclusively from Chicago Title.[27]

### D. All of the Plaintiffs Are Similarly Situated and Their Damages Are Easily Calculated.

The plaintiffs in this matter have had very similar interactions with WB Title. They were all referred to WB Title by an agent of WB Realty. Their title search, escrow services, and closing services were provided by Chicago Title. WB Title provided them with minimal services that will generally have been of a clerical nature. And their damages will be easily calculated. Pursuant to 12 U.S.C. § 2607(d)(2), the defendants, who have violated RESPA's prohibition on kickbacks, are "jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."[28] Therefore, the plaintiffs' damages calculation would be a simple matter of multiplying the title charges on their HUD settlement statements by three.

---

[27] Chicago Title Issuing Agency Contract, P's Ex. 5, App. 6; Kajfasz depo 51:23-52:5, App. 1.

[28] *Kahrer v. Ameriquest Mortgage Company,* 418 F.Supp.2d 748, 756 (W.D.Pa.2006)

## IV.    LEGAL ANALYSIS

This case is ideally suited for class action treatment.  There are a large number of putative class members who individually would not have the means or desire to litigate their claims. The core issues in this case involve the payment of illegal kickbacks or referral fees from Chicago Title to the owners of WB Realty.  The named plaintiffs' experiences are typical of that of each putative class member.  The named plaintiffs are conscientious representatives who can fairly represent the class and they have chosen proficient counsel to represent the class.  Common legal theories and common factual issues will command the litigation. No other procedure can achieve, in as efficient a manner, what a class action can in this case.

### A.  CLASS DEFINITION

The named plaintiffs propose a class definition of "All residents of Ohio who, since November 9, 2004, paid Welles Bowen Title Agency, LLC for real estate settlement services in connection with the purchase or sale of a residential property if either of the parties to the transaction was referred to Welles Bowen Title Agency, LLC by Welles-Bowen Realty, Inc. or one of its agents."  Although the proposed class definition would include the entire state of Ohio, the overwhelming majority of the putative class members would reside in Lucas and Wood Counties, because this is the area covered by Chicago Title's title bank.[29]

A class definition must (1) specify a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitate the court's ability to ascertain its membership.[30] The proposed definition satisfies these requirements.[31] All of the proposed class members were harmed by paying fees to a sham title agency, which used those fees to funnel kickbacks from Chicago Title to WB Realty in violation of RESPA.

---

[29] Kajfasz depo 13:11-16, App. 1.
[30] *Cervantes v. Sugar Creek Packing Co., Inc.,* 210 F.R.D. 611, 619-20 (S.D.Ohio 2002).
[31] The defendants have indicated that they can identify those clients of WB Title who were referred to it by WB Realty.

## B.  GENERAL PRINCIPLES OF CLASS CERTIFICATION

Four guiding principles of class certification bolster the appropriateness of certifying the present case as a class action.

### 1.   The Underlying Rationale for Class Actions Supports Class Certification.

The U.S. Supreme Court has set forth the following rationale for Class actions:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.[32]

A case that fits squarely within this rational should rarely be denied class certification, because the denial of class certification in this type of case is the practical equivalent of a denial of any remedy to the victims of the wrongful actions.

Class certification in the present case is supported by this rationale. Individual suits by class members are not economically feasible because of the relatively small amount of each individual recovery. The cost to litigate individual claims would be more than any potential award. Thus, class members would almost certain<u>ly</u> be without any effective redress should class certification be denied.

### 2.   The Allegations in the Complaint Must Be Accepted as True.

For purposes of class certification, this Court must accept the facts alleged in the complaint as true.[33] Facts cited by a defendant that are contradictory to those asserted in the complaint should be disregarded. At this stage of the litigation, the defendants are limited to legal arguments concerning only the issue of whether the facts, as stated in the plaintiffs' complaint, satisfy the requirements for class certification.

---

[32] *Amchem Prods., Inc. v. Windsor* (1997), 521 U.S. 591, 617.
[33] *In re Revco Securities Litigation*, 142 F.R.D. 659, 662 (N.D. Ohio E.D. 1992).

### 3. Inquiry into the Merits of the Underlying Action is not Permitted at the Class Action Certification Stage.

It is inappropriate to inquire into the merits of the action at the class certification stage.[34] In analyzing the motion for class certification, the appropriate inquiry is whether the requirements of Rule 23 are satisfied by the facts alleged by the plaintiff. The defendants' arguments concerning the merits of the plaintiffs' claims should be disregarded.

### 4. A Trial Court Has Broad Discretion in Determining Whether to Certify an Action as a Class Action.

This Court has broad discretion in determining whether a class action is maintainable under the facts of the complaint.[35] Any doubts concerning the propriety of a class certification should be resolved in favor of certification.[36]

## C. THE REQUIREMENTS OF FED.R.CIV. P. 23(a) ARE SATISFIED

"The Federal Rules of Civil Procedure mandate a two-step process to determine if an action is maintainable as a class action."[37] "*First*, the court must determine whether the four prerequisites to a class action are present, [that is, numerosity, commonality, typicality and adequacy of representation]. *** *Second*, if the foregoing prerequisites are satisfied, the court must then decide whether one of the factual situations described in Rule 23(b) has been met."[38] During seventy years of class action litigation, the threshold requirements have remained constant: numerosity, commonality, typicality, and adequacy of representation. The putative class in this case satisfies all of these requirements.

---

[34] *Eisen v. Carisle & Jacqueline*, 417 U.S. 156, 177-78 (1974).

[35] *Violette v. P.S. Days*, 214 F.R.D. 207, 211 (S.D. Ohio 2003).

[36] *Thompson v. Community Insurance Co.*, 213 F.R.D. 284, 291 (S.D. Ohio 2002), citing *Eisen*, 417 U.S. at 178.

[37] *Walther v. Pension Plan for Salaried Employees of the Dayton-Walther Corp.*, 880 F.Supp. 1170, 1176 (S.D. Ohio 1994); *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 579 (S.D. Ohio 1993).

[38] Id. (emphasis of *Mayo*); Fed.R.Civ.P. 23.

### 1.   Numerosity – Fed.R.Civ.P. 23(a)(1)

For a class action to be maintained, the class must be "so numerous that joinder of all members is impracticable ***."[39] The numerosity requirement is satisfied if the "plaintiff will suffer a strong hardship or inconvenience in litigation if joinder is required."[40] In this case, WB Title has served as a title agent in more than 300 transactions in the past year.[41] Both parties to each of those transactions would be class members, creating a putative class of more than 600 individuals. The joinder of 600 individual plaintiffs would impose a tremendous hardship on the plaintiffs.

### 2.   Commonality – Fed.R.Civ.P. 23(a)(2)

Rule 23(a)(2) requires that there be questions of law or fact common to the class. The test is qualitative, not quantitative; there need be only a single issue common to all the members of the class.[42] "The commonality requirement is met 'as long as the members of the class have allegedly been affected by a *general* policy of the defendant, and the general policy is the focus of the litigation.'"[43]

Here, the conduct of the defendants was uniform.  All of the class members were referred to WB Title by one of the defendants, or an agent of one of the defendants.  In all of the transactions at issue, WB Title performed no substantial services, while Chicago Title performed the title search, provided the escrow service, and conducted the closing.  The defendants' conduct in all of these transactions was virtually identical, and the defendants consistently violated RESPA's prohibitions on kickbacks and the payment of unearned fees. In sum, the issue

---

[39] Fed.R.Civ.P. 23(a)(1).
[40] *Violette v. P.A. Days, Inc.*, 215 F.R.D. 207, 212 (S.D. Ohio 2003).
[41] Kajfasz depo at 71:9-17, App. 1.
[42] *Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 352 (E.D.N.Y.1997).
[43] *Almendares v. Palmer*, 222 F.R.D. 324, 331 (N.D. Ohio 2004), quoting *Sweet v. Gen. Tire and Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976).

of whether WB Title is a sham title company is determinative with respect to the merits of all of the class members' claims; therefore, common questions of law and fact form the core of the class members' cause of action.

Individual issues are either nonexistent or comprise only an insignificant part of the case. The substantive claims of the named plaintiffs and of other class members are identical and will require evidentiary proof of the same nature and application of the same principles of law. Because common issues of law and fact predominate, the commonality requirement is satisfied.

### 3.  Typicality – Fed.R.Civ.P. 23(a)(3)

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class ***." Where the named plaintiffs' "claims arise from the alleged same course of conduct by Defendants that gives rise to the claims of all class members, and *** [the named plaintiffs'] claims are based on the same legal theories advanced on behalf of the class as a whole, Plaintiffs meet the typicality requirement."[44] Typicality is not defeated by a potential variation in the amount of damages between individual class members.[45]

In this case, the named plaintiffs and the putative class members have the same legal theory – that the defendants violated RESPA because Chicago Title was paying kickbacks or unearned fees in return for referrals from WB Realty and its agents. The claims of the named plaintiffs and the class members also arise from the same course of conduct – the defendants' establishment and operation of a sham title company, WB Title. Therefore, the claims of the named plaintiffs are typical of the claims of the class.

---

[44] *Bentley v. Honeywell International,Inc.* 223 F.R.D. 471, 484 *(S.D. Ohio 2004)*,; *Almendares*, 222 F.R.D. 324, 331, quoting *Sprague v. General Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998) ("'a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if her or her claims are based on the same legal theory.'")
[45] *Violette v. P.A. Days*, 214 F.R.D. 207, 214 (S.D.Ohio 2003)

### 4.   Adequacy of Representation – Fed.R.Civ.P. 23(a)(4)

Rule 23(a)(4) requires that the representative parties fairly and adequately represent the class.   There are two criteria for determining whether the representation of the class will be adequate: (1) the named parties must have common interests with unnamed members of the class, and (2) it must appear that the named parties will vigorously prosecute the interests of the class through competent counsel.[46]

#### *The Class Representatives are Adequate.*

The interests of the named plaintiffs in this matter are identical to those of the class members. Both the named plaintiffs and the unnamed class members used the settlement services of WB Title, a sham title agency. As a consequence of doing business with a sham title agency, a portion of the fees paid by the named plaintiffs and all of the class members was paid to the owners of WB Realty in the form of unearned fees and or kickbacks for referrals. The named plaintiffs do not have any additional claims separate and apart from those of the other class members. And, the named plaintiffs will be able to recover on their claim only by proving a set of facts that will entitle all of the class members to a recovery, i.e., that WB Title is a sham established to funnel kickbacks from Chicago Title in violation of RESPA.

#### *Class Counsel Is Competent and Qualified*

As this Court has stated, "Rule 23 (a)(4) demands a standard of practice which exceeds the 'usual quality of practice' before a federal court."[47] The investigation and prosecution of claims may be found vigorous where the plaintiffs "have conducted significant briefing and

---

[46] *Almendares,* 222 F.R.D. 324, 332 (N.D.Ohio 2004).
[47] *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995), quoting *Jackshaw Pontiac v. Cleveland Press Pub. Co.*, 102 F.R.D. 183 (N.D. Ohio 1984).

discovery and have aggressively argued the merits of the action in briefs before [the trial court]."[48]

The named plaintiffs' legal counsel has a time-honored reputation for competency, experience and skill in handling complex litigation, including class actions. Their counsel's ability to skillfully litigate cases such as the present case is well-documented.[49] The named plaintiff's counsel has dedicated and will continue to dedicate high levels of legal skill and devotion to the vigorous prosecution of this class action litigation.

Because the named plaintiffs' interests are aligned with those of the class members, and they have retained counsel competent to prosecute this action, they will fairly and adequately represent the class.

### D.  THE REQUIREMENTS OF RULE 23(b)(1)(A), 23(b)(3), and 23(b)(2) ARE SATISFIED.

#### 1.  The proposed class satisfies the requirements of Rule 23(b)(1)(A).

Rule 23(b)(1)(A) provides that a class action is maintainable if "the prosecution of separate actions *** would create a risk of *** inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class ***." A Rule 23(b)(1)(A) class is maintainable when the "suit challenges the conduct or practices of defendants who are required by law or by practical circumstances to deal with all class members in the same way."[50] Here, the defendants were required by law to deal with all of the class members in the same way, i.e., they were required to provide the class members with a standardized settlement statement and they were not allowed to

---

[48] *Mayo*, 148 F.R.D. 576, 582.
[49] See, e.g., *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, (1988); *Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 696 N.E.2d 1001.
[50] 2 NEWBERG ON CLASS ACTIONS § 4:8 (4th ed. 2002).

operate a sham title agency for the purpose of generating kickbacks for the owners of WB Realty.

The liability of the defendants hinges on the defendants' conduct. If WB Title is determined to be a sham affiliated business arrangement, all of the class members would be entitled to damages "in an amount equal to three times the amount of any charge paid" to defendants for settlement services.[51] There are no facts unique to individual class members that would relieve the defendants from liability.

While the plaintiffs are seeking primarily monetary relief, a critical component of the relief granted in this matter would be an order enjoining the defendants from operating WB Title as a sham title agency.   The fact that monetary damages are the predominant form of relief sought does not preclude class certification under Rule 23 (b)(1)(A).[52]

### 2.   The proposed class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy."[53] (Emphasis added.)

### *Predominance – Fed.R.Civ.P. 23(b)(3)*

"[T]he predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all of the issues in the suit."[54] This case will arguably be decided by the resolution of a single issue: whether WB Title is a sham affiliated business arrangement.   There are no issues of law unique to individual class members.

---

[51] 12 U.S.C. § 2607(d)(2).
[52] 2 NEWBERG ON CLASS ACTIONS § 4:8 (4th ed. 2002).
[53] Fed.R.Civ.P. 23(b)(3).
[54] 2 NEWBERG ON CLASS ACTIONS § 4:25 (4th ed. 2002).

The primary issue of fact that would be unique to each class member would be how much each plaintiff paid the defendants for settlement services.  This question can be readily resolved by reference to the defendants' records.  Therefore, questions of law and fact common to all class members predominate over any questions affecting only individual class members.

### Superiority – Fed.R.Civ.P. 23(b)(3)(B)

For a class to be upheld under Rule 23(b)(3), the action must not only present questions of law and fact that predominate over individual questions, a class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. "Possible alternatives to the class action device include: joinder, intervention, a test case, and an administrative proceeding."[55] Here, a class action is clearly superior to the alternative procedures available for resolving the class claims for the following reasons:

- The class members are too numerous for joinder to be practical.  The same is true for intervention.

- Individual lawsuits are economically impractical for class members. Many of the class members claims would likely be worth less than $10,000, a sum that would be quickly consumed by attorney fees if class members pursued individual suits. Joinder or intervention would be impractical given the relatively small value of the individual claims of the class members.

- The test case alternative is also inferior to a class action because the defendants would likely settle individual claims to prevent the issue of liability from being resolved.

- A test case would require follow-up litigation that could be avoided by a class action.

---

[55] 2 NEWBERG ON CLASS ACTIONS § 4:27 (4th ed. 2002).

***Additional factors to be considered pursuant to Rule 23(b)(3).***

Rule 23(b)(3) also requires the consideration of the following factors:

*The interest of members of the class in individually controlling the prosecution of separate actions.* There are unlikely to be large individual claims that would make it feasible or desirable for a potential class member to pursue individual litigation.

*The extent and nature of any litigation already commenced.* The plaintiffs are unaware of any similar claims having been filed against the defendants.

*The desirability of concentrating the litigation in a particular forum.* No similar claims against WB Title and the other Welles Bowen defendants have been filed in another jurisdiction.

*The difficulties involved in the management of a class action.* Management difficulties make a class action improper "only when such difficulties make a class action less fair and efficient than some other method ***."[56] Frequently raised manageability issues, such as the complexity of individual issues, the geographical scope of the class, counterclaims, and notice issues, are not problematic in this case. There are no individual issues; the geographic scope of the class is narrowly defined; and, class members can be readily identified from the defendants' records.

### 3.   The proposed class also satisfies the requirements of Rule 23(b)(2).

Certification pursuant to Rule 23(b)(2) is appropriate when "the party opposing the class has acted *** on grounds generally applicable to the class, thereby making appropriate final injunctive relief *** with respect to the class as a whole ***."[57] Here, the defendants have violated RESPA by operating a sham title agency for the purpose of generating kickbacks for the

---

[56] 2 NEWBERG ON CLASS ACTIONS § 4:32 (4th ed. 2002).
[57] Fed.R.Civ.P. 23(b)(2).

owners of WB Realty. Therefore, they should be enjoined from continuing to operate their sham title agency.

Also, the plaintiffs' damages can be calculated on a class-wide basis. The plaintiffs' damages will equal three times the total amount of fees charged by WB Title and Chicago Title for every transaction in which WB Title served as the title agent. Although the class members individual damages will have to be determined by reference to their HUD settlement statements, these calculations will be much simpler than the back pay damages calculations that the Sixth Circuit has recognized as susceptible to calculation on a class-wide basis.[58]

## V.   CONCLUSION

This case clearly and unequivocally fulfills the requirements of Rules 23(a), 23(b)(1)(A), 23(b)(3), and 23(b)(2).  The plaintiffs believe that the class would be most appropriately certified under Rule 23(b)(1)(A).  If the Court determines that the class does not satisfy the prerequisites of Rule 23(b)(1)(A), then the proposed class should be certified under Rule 23(b)(3) or 23(b)(2).

*/s/ James S. Timmerberg*
James S. Timmerberg (0067499)
jst@murrayandmurray.com
John T. Murray (0008793)
jotm@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Post Office Box 19
Sandusky, Ohio  44871-0019
Telephone:     (419) 624-3000
Facsimile:     (419) 624-0707

---

[58] *Cervantes v. Sugar Creek Packing Co., Inc.,* 210 F.R.D. 611, 628 (S.D.Ohio 2002), citing *Coleman v. General Motors Acceptance Corp.,* 296 F.3d 443, 449 (6th Cir.2002).

John L. Huffman (0039658)
mmickel783@aol.com
Mickel & Huffman
520 Madison Ave., Suite 520
The Spitzer Building
Toledo, Ohio  43604-1351
Telephone:  (419) 242-8461
Facsimile:   (419) 242-6866

Attorneys for Plaintiffs


<u>CERTIFICATION</u>

I hereby certify that on this 13th day of November, 2006, the foregoing was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


***/s/ James S. Timmerberg***
One of Plaintiffs' Attorneys