s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

| | | |
|---|---|---|
| | : | |
| Erick C. Carter, et al., | | Case No.:  :05CV7427 |
| | : | |
| Plaintiffs, | | (Hon. Jack Zouhary) |
| | : | |
| v. | : | **MEMORANDUM IN OPPOSITION** |
| | | **TO PLAINTIFFS' MOTION FOR** |
| | | **CLASS CERTIFICATION AND IN** |
| Welles-Bowen Realty, Inc., et al., | : | **SUPPORT OF CHICAGO TITLE** |
| | | **INSURANCE COMPANY'S** |
| Defendants. | : | **MOTION TO DISMISS** |
| | : | |
| | : | |

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.   INTRODUCTION ...................................................................................................1

II.  FACTS ...................................................................................................................1

III. ARGUMENT ..........................................................................................................2

   A.   Standing:  Constitutionally-Required "Injury In Fact"...................................3

   B.   There Is No Evidence That The Carters Were Charged An
       Excessive Rate For Their Title Insurance. .............................................4

   C.   Under The "Filed-Rate Doctrine", Paying A Filed Rate Causes No
       Damage. ...................................................................................................7

   D.   The Court Should Follow Precedent Interpreting RESPA To
       Require Article III Standing, And To Preserve The Act's Codified
       Purpose.....................................................................................................8

      1.   The Court Should Not Follow Decisions Circumventing
         Article III Standing Requirements. ...............................................11

      2.   The Court Should Not Follow Decisions Disregarding The
         Codified Purpose of RESPA.........................................................12

      3.   The Court Should Not Follow Decisions Misinterpreting The
         Language of § 8. ............................................................................14

IV.  CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687,
132 L. Ed. 2d 597, 115 S. Ct. 2407 (1995) ................................................................................16

*Barr v. Ohio Edison Company*, C.A. No. 16629, 1995 Ohio App. LEXIS 753
(Summit Cty., Feb. 25, 1995) ......................................................................................................7

*Conroy v. Aniskoff*, 507 U.S. 511 (1993) ....................................................................................12

*Contawe v Crescent Heights of America, Inc.*, 2004 U.S. Dist. LEXIS 20344,
2004 WL 2244538 (E.D. Pa. 2004) ............................................................................................8

*Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ...............................16

*Durr v. Intercounty Title Co.*, 14 F.3d 1183 (7th Cir. 1994), *cert. denied*, 513
U.S. 811 (1994) ...........................................................................................................................8

*Finley v. United States*, 490 U.S. 545 (1989) .............................................................................12

*Garcia v. Pueblo Country Club*, 299 F.3d 1233 (10th Cir. 2002) ...................................................5

*Greenway v. Int'l Paper Co.*, 144 F.R.D. 322 (W.D. La. 1992) .....................................................5

*Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F. 3d 1217 (9th Cir.
1995) ...........................................................................................................................................5

*Harris v. Champion*, 51 F.3d 901 (10th Cir. 1995) .......................................................................3

*In re Am. Med. Sys.*, 75 F.3d 1069 (6th Cir. 1996) ........................................................................4

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001), *cert. denied* 534 U.S.
1113, 122 S.Ct. 919, 151 L.Ed.2d 884 (2002) ...........................................................................4

*Kahrer v. Ameriquest Mortgage Co.*, 418 F.Supp.2d 748 (W.D. Pa. 2005).................9, 10, 12, 15

*Keogh v Chicago & Northwestern RY.*, 260 U.S. 156, 43 S. Ct. 47, 67 L. Ed.
183 (1922)...........................................................................................................................7, 14

*Lewis v. Knutson,*  699 F.2d 230 (5th Cir. 1983) .......................................................................11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d
351 (1992)..............................................................................................................................3, 10

*Market Co. v. Hoffman*, 101 U.S. 112, 25 L. Ed. 782 (1879) ..........................................16

*Montclair v. Ramsdell*, 107 U.S. 147, 27 L. Ed. 431, 2 S. Ct. 391 (1883) .....................................16

*Moore v. Radian Group, Inc.*, 233 F.Supp.2d 819 (E.D. Tex. 2002), *aff'd without opinion*, 69 Fed. Appx. 659, 2003 WL 21356062 (5th Cir. 2003) ...........................8, 9

*Morales v. Attorneys' Title Insurance Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997) ..............................................................................................................................7, 8

*Mullinax v. Radian Guaranty, Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004) ..................................8

*O'Shea v. Littonton*, 414 U.S. 488, 94 S.Ct. 669 (1974) ..............................................................3, 4

*Patton v. Triad Guarantee Insurance Corp.*, No. CV100-132 (S.D. Ga. October 10, 2002) ...........................................................................................................10

*Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001), *cert. denied* 534 U.S. 945, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001) ...................................11

*Ratzlaf v. United States*, 510 U.S. 135, 126 L. Ed. 2d 615, 114 S. Ct. 655 (1994) ...............................................................................................................................16

*Rector v. City and County of Denver*, 348 F.3d 935 (10th Cir. 2003)............................................4

*Riveria v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002).....................................................3, 4

*Robinson v. Fountainhead Title Corp.*, 2006 U.S. Dist LEXIS 60613 (D. Md. 2006) ....................................................................................................................9, 10, 16

*Trinity Industries, Inc. v. Martin*, 963 F.2d 795 (5th Cir. 1992) ....................................................3

*United States v. Menasche*, 348 U.S. 528, 99 L. Ed. 615, 75 S. Ct. 513 (1955) ..........................16

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).........................3

*Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 1297, 45 L.Ed.2d 343 (1975) ...............................3, 4, 11

*Williams v. Taylor*, 529 U.S. 362, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000) ...........................16

**Statutes**

12 U.S.C. § 2601(a) .......................................................................................................................13

12 U.S.C. § 2601(b) .......................................................................................................................13

12 U.S.C. § 2607(a) .........................................................................................................................2

12 U.S.C. § 2607(b) ........................................................................................................2

12 U.S.C. § 2607(d)(2) ...............................................................................................2, 15

Ohio Revised Code § 3935.01 ........................................................................................6

Ohio Revised Code § 3935.03(B) ..................................................................................6

Ohio Revised Code § 3953.28 ........................................................................................6

Ohio Revised Code Chapter 3901 ..................................................................................6

## Other Authorities

DICTIONARY OF MODERN LEGAL USAGE 849 (2d ed. 1995) ..........................................14

## I.      INTRODUCTION

Plaintiffs have brought this action alleging violations of Real Estate Settlement Procedures Act (RESPA), alleging that a class should be certified for all persons similarly situated, and that "damages" should be awarded.  Because plaintiffs were and remain unable to allege or prove that they have suffered any injury in fact as a result of any alleged violations of RESPA, plaintiffs lack standing, and Chicago Title Insurance Company is entitled to dismissal as a matter of law.  Consequently, plaintiffs' motion for class certification should be denied.

## II.     FACTS

On September 1, 2005, plaintiffs Erick and Whitney Carter entered into a residential real estate purchase agreement to purchase 431 Blue Jacket Road in Perrysburg, Ohio ("the purchase agreement").  (Complaint, ¶ 20.)  At closing, the Carters were charged $946.28 by Welles Bowen Title Insurance Agency for title insurance.  (Id., ¶ 24; Whitney Carter depo., Ex. D.)  The $946.28 in title insurance charges consisted of an owners policy ($696.28), a title commitment or binder ($75), survey coverage ($100) and an EPL endorsement ($75).  (Whitney Carter depo., pp. 52-54; Exhibit E.)  Each of the charges was laid out in an Affiliated Business Arrangement Disclosure Statement reviewed and acknowledged by plaintiffs on September 1, 2005 (id., pp. 16-17; Exhibit C), three and one-half weeks prior to closing.  The charge for title insurance, survey coverage and EPL endorsement were at rates mandated by the Ohio Department of Insurance, and the title commitment was at a rate lower than for customers who contract directly with Chicago Title Insurance Company.  (Michael P. Kajfasz Affidavit, ¶ 2.)  Plaintiffs sustained no monetary damage, since the title insurance charges were made up of regulated premiums (also known as "filed rates") and non-excessive usual and customary charges.  (Kajfasz Affidavit, ¶ 2; Whitney Carter depo., pp. 31, 47, 78; Erick Carter depo, p. 19.)

### III.   ARGUMENT

Plaintiffs claim that they are entitled to relief pursuant to both § 8(a) and § 8(b) of RESPA, which provide in pertinent part:

> Business Referrals.  No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service shall be referred to any person.  [12 U.S.C. § 2607(a).]

> Splitting Charges.  No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally-related mortgage loan other than for services actually performed.  [12 U.S.C. § 2607(b).]

Liability for violations of § 8 of RESPA is defined by § 8(d)(2) of the Act which provides:

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged *for the settlement service involved in the violation* in an amount equal to three times the amount of any charge paid for *such* settlement service.  [12 U.S.C. § 2607(d)(2), emphasis added.]

A fundamental flaw[1] in the plaintiffs' action is that there is no out-of-pocket loss attributable to the defendants' alleged unlawful referral practice.  Plaintiffs lack standing to pursue a claim under the RESPA for the basic reason that they have suffered no "injury in fact"; therefore, Chicago Title Insurance Company is entitled to dismissal.

---

[1]   Defendant Chicago Title Insurance Company has a number of defenses but this memorandum focuses only on lack of standing.

**A.      Standing:  Constitutionally-Required "Injury In Fact".**

Article III of the United States Constitution limits the judicial power of the United States Courts to the resolution of cases and controversies. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). The United States Supreme Court has inferred from the case or controversy requirement that a litigant must have "standing" to maintain an action in federal court.

Constitutional standing has three elements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).  First, the plaintiff must have suffered an "injury-in-fact," which is both "concrete and particularized" and "actual or imminent."  Id.  Second, there must be a causal connection between the injury and the conduct complained of.  Id.  Third, it must be likely . . . that the injury will be redressed by a favorable decision.  Id. at 561, 112 S. Ct. 2130.   If there is no actual or threatened injury, there is no case or controversy sufficient to confer jurisdiction on the federal courts.

"Artful pleading…is not enough to create an injury-in-fact."  *Riveria v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 321 (5th Cir. 2002).   Standing may not be based upon speculative, hypothetical, or abstract assertions of injury.  *O'Shea v. Littonton*, 414 U.S. 488, 494, 94 S.Ct. 669 (1974).  To allege standing, "the plaintiff still must allege a distinct and palpable injury to himself…."  *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 1297, 2206, 45 L.Ed.2d 343, 356 (1975).   A plaintiff does not have Article III standing unless he can "plead an actual or threatened injury that is fairly traceable to the conduct complained of and likely to be redressed by the relief requested."  *Trinity Industries, Inc. v. Martin*, 963 F.2d 795, 798 (5th Cir. 1992); *Harris v. Champion*, 51 F.3d 901, 907 (10th Cir. 1995). A plaintiff's failure to plead sufficient

facts to meet Article III standing requirements mandates dismissal of the case. *Warth*, 422 U.S. at 501-02; *McGovern v. American Airlines, Inc.*, 511 F.2d 653 (5th Cir. 1975).

Likewise, in the context of a class action, the Court must determine whether the individually named plaintiffs have standing to pursue the asserted claims against the defendants. *O'Shea v. Littonton*, 414 U.S. 488, 494, 94 S.Ct. 669 (1974). Plaintiffs also must prove damages on a classwide basis. *In re Am. Med. Sys.*, 75 F.3d 1069, 1084-85 (6th Cir. 1996). If the named plaintiffs lack standing to sue, the case must be dismissed. *Riveria,* 283 F.3d 315, 318-22 (dismissing class action suit for lack of standing); *Rector v. City and County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003) (decertifying a class after class representatives' personal claims were dismissed for lack of standing); *James v. City of Dallas*, 254 F.3d 551, 563, 568-69 (5th Cir. 2001), *cert. denied* 534 U.S. 1113, 122 S.Ct. 919, 151 L.Ed.2d 884 (2002) (dismissing several class-wide claims because named plaintiffs lacked standing to sue).

To make out a prima facie case under §§ 8(a) or (b) of RESPA, and for a private plaintiff to have standing to sue individually or as a class representative, there must be an allegation and proof that the fees paid by the plaintiff for settlement services were inflated as a result of a RESPA violation. In this case, the Carters are unable to show that the charges were higher than normal; in fact, some charges were lower. (Kajfasz Aff., ¶¶ 1-2.)

### B.      There Is No Evidence That The Carters Were Charged An Excessive Rate For Their Title Insurance.

In this case, plaintiffs' claim cannot survive Chicago Title's motion to dismiss because there is no allegation, much less evidence, of an injury-in-fact arising from the real estate closing. The Court should find no injury-in-fact as a matter of law not only because the Carters admit that they have no evidence that a portion of their settlement charge was excessive and

caused by the allegedly unlawful referral arrangement between the defendants, but also because the defendants charged only the "filed rates" required by state law.  (Id. at ¶ 2.)

The Carters have not alleged (nor have they offered evidence) that they paid excessive or inflated charges for settlement services.  The Carters paid $946.28 for title insurance (Complaint, ¶ 24), and plaintiffs admit that they are unaware that they were overcharged, or that they suffered any damage.  Mr. Carter testified:

> Q      So, you don't know that you were overcharged?
>
> A      No.  I've never gone out and asked another Realtor or title agency what they would have charged us, no.
>
> Q      So, you don't know that you were overcharged?
>
> A      No.  [Erick Carter depo., p. 19.]

Mrs. Carter also testified:

> Q      Okay.  At this point, as you sit here right now, is it true that you have no knowledge that you actually sustained any monetary damage?
>
> A      At this point, I do not know.  [Whitney Carter depo, p. 78.]

The Carters therefore cannot refute the affidavit of Mr. Kajfasz.[2]

Another reason the fact is undisputed that the fees were not unnecessarily high as a result of the relationship between the defendants is that the defendants were required by state law to

---

[2]      In a blatant attempt to manufacture a genuine issue of material fact, plaintiff Whitney Carter submitted 63 separate errata to her deposition testimony without offering any explanation for the changes, many of which are changing "yes" answers to "no" answers and vice versa.  The practice is prohibited by *Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F. 3d 1217, 1225-27 (9th Cir. 1995), applying the sham affidavit rule to errata.  See also *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) ("'[Rule 30(e)] cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.'", quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)).

charge "filed rates." The business of insurance is intensely regulated in Ohio. Title 39 of the Revised Code sets forth a comprehensive scheme of regulating virtually every aspect of the business of insurance in the state. See R.C. Chapter 3901. This is especially true with respect to the setting of rates. Pursuant to R.C. § 3953.28, all title insurers must file their proposed rates with the Department of Insurance ("DOI") prior to charging those rates to consumers and businesses. The Ohio Revised Code establishes an exhaustive review and approval process with respect to insurance rates and sets criteria and standards for rate compliance. R.C. § 3953.28. R.C. 3935.01, et seq. The statute expressly provides, "Rates shall not be excessive, inadequate, or unfairly discriminatory." R.C. § 3935.03(B). Therefore, a duly filed rate that has obtained regulatory approval is deemed not to be excessive.[3]

The fact is undisputed that Welles Bowen Title Agency charged Mr. and Mrs. Carter the rates filed by its underwriter Chicago Title Insurance Company, as required by Ohio law. (Kajfasz Aff., ¶ 2.) Having paid the filed rates, plaintiffs' legal rights have not been violated, thus plaintiffs suffered no legally cognizable injury. The undisputed evidence demonstrates that the Carters suffered no injury-in-fact or cognizable injury, because they were not overcharged, and actually paid a somewhat lower charge than if they had dealt with Chicago Title Insurance Company directly. (Id.)

---

[3] An individual who wishes to challenge a filed rate as being excessive or who believes he has otherwise been aggrieved by the rate may request a hearing before the DOI. The DOI may also schedule a hearing on its own initiative to determine whether a filed rate complies with Ohio law. R.C. § 3935.05(C); see also R.C. § 3901.04(B) (DOI may initiate investigation "upon complaint or otherwise" when DOI "believes it to be in the best interest of the public and necessary for the protection of the people in the state"). The DOI is authorized to strike down any portion of a rate filing if the DOI determines that a rate does not comply. R.C. § 3935.05(D).

## C.      Under The "Filed-Rate Doctrine", Paying A Filed Rate Causes No Damage.

Under the "filed rate doctrine", the rights of a ratepayer are defined by the regulatory scheme. *Keogh v Chicago & Northwestern RY.*, 260 U.S. 156, 163, 43 S. Ct. 47, 67 L. Ed. 183 (1922). A ratepayer cannot claim that he has been damaged by paying a filed rate because what rate is legal has already been determined by the regulatory agency. Id., 260 U.S. at 162, 43 S.Ct. at 187 (private shipper cannot recover damages "because he lost the benefit of rates still lower, which, but for the conspiracy, he would have enjoyed"). The filed-rate doctrine does not preclude recovery of the amount by which the paid fee exceeded the filed rate, but the doctrine does foreclose a claim that the filed rate itself is the instrument by which the consumer was damaged. Id., 260 U.S. at 165, 43 S. Ct. at 50. Adopting the filed rate doctrine, Ohio courts have held that rates filed with, and approved by, a regulatory agency "have the force and effect of law and the public is bound thereby." *Barr v. Ohio Edison Company*, C.A. No. 16629, 1995 Ohio App. LEXIS 753, *13 (Summit Cty., Feb. 25, 1995).

Courts have applied the filed-rate doctrine to bar RESPA claims. For example, *Morales v. Attorneys' Title Insurance Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997), is directly on point. The plaintiffs in *Morales* sued under RESPA claiming that the customary allocation of 70% of the title insurance premium to the agent and 30% to the underwriter was a kickback to the agent because it was not commensurate with the value of the services actually performed, even though that split was expressly permitted by Florida law. Id. at 1424. The plaintiffs also argued that "RESPA allows recovery of the entire title insurance and title evidence charges each one of them paid, rather than the portion of such charges that allegedly represented a kickback or split prohibited by RESPA." Id. at 1427. The court held that, under the "filed rate doctrine", plaintiffs could not have suffered an "injury in fact" when they paid the rates explicitly permitted

by statute.  The court went on to say that damages under RESPA are not three times the charge

for all settlement services, but three times the amount by which the charge exceeds a reasonable

charge for the settlement services involved in the violation.  Id. at 1427.  The *Morales* Court held

that the plaintiffs lacked standing to sue under RESPA because they had not suffered an injury in

fact as a result of the alleged RESPA violation.[4]

Several other district courts since *Morales* have addressed the question of standing and

concluded that, absent an allegation of the payment of an excessive settlement charge (above the

filed rate) caused by the alleged referral arrangement, a plaintiff does not have standing to sue

under RESPA.  *See Moore v. Radian Group, Inc.*, 233 F.Supp.2d 819 (E.D. Tex. 2002), *aff'd*

*without opinion*, 69 Fed. Appx. 659, 2003 WL 21356062 (5th Cir. 2003) (A RESPA violation,

standing alone, is insufficient to confer standing upon a private plaintiff absent a showing of

actual or threatened injury); *Mullinax v. Radian Guaranty, Inc.*, 311 F. Supp. 2d 474 (M.D.N.C.

2004) (Since there was no allegation of an overcharge in this complaint alleging a RESPA

kickback violation, the standing requirement was not met); *Contawe v Crescent Heights of*

*America, Inc.*, 2004 U.S. Dist. LEXIS 20344, 2004 WL 2244538, *8 (E.D. Pa. 2004) ("plaintiff

alleging no charge-inflation has no standing to bring suit").

> **D.     The Court Should Follow Precedent Interpreting RESPA To Require**
> **Article III Standing, And To Preserve The Act's Codified Purpose.**

Since *Durr* was decided in 1994 and *Morales* in 1997, most courts have agreed that the

appropriate measure of damages in RESPA cases is not the total paid, but **only the amount of**

**any overcharge caused by the RESPA violation**.  For example, in *Mullinax v. Radian*

*Guaranty, Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004), the plaintiffs' RESPA claim was

---

[4]      The District Court in *Morales* relied on the Seventh Circuit Court of Appeals decision in *Durr v.*
*Intercounty Title Co.*, 14 F.3d 1183 (7th Cir. 1994), *cert. denied*, 513 U.S. 811 (1994), which is the only
Circuit that has addressed RESPA standing.  *Morales*, 983 F. Supp. 1428.

dismissed because they were not "overcharged" for primary mortgage insurance, and were thus not injured.  The plaintiffs had argued that § 2607(d)(2) permitted them to obtain damages of three times the total amount they paid for primary mortgage insurance.  In finding that the plaintiffs had not been injured at all (id. at 486), the court expressly adopted the holdings and the interpretations of the courts in *Durr*, *Morales*, and *Moore v. Radian Group, Inc.*, 233 F. Supp. 2d 819 (E.D.Tex. 2002).

Similarly, in *Moore*, the plaintiffs claimed that insurers provided below-market rates in exchange for lender referrals in violation of RESPA.  The defendant's motion to dismiss for lack of standing was granted on the basis that the plaintiff suffered no "injury in fact."  Relying upon *Durr* and *Morales*, the court concluded that the damage provision of RESPA "extends only to that portion of the settlement service charge that is involved in the RESPA violation."  Thus, a private plaintiff may only sue for damages "measured by that portion of a [premium] that is excessive (and so caused by an unlawful referral arrangement) or otherwise used to fund a kickback in exchange for the referral of the PMI business."  *Moore*, 233 F. Supp.2d 819, 826.

Plaintiffs are expected to rely however on recent district court opinions that criticize and deviate from *Morales* and *Durr*.  See *Kahrer v. Ameriquest Mortgage Co.*, 418 F.Supp.2d 748 (W.D. Pa. 2005); *Robinson v. Fountainhead Title Corp.*, 2006 U.S. Dist LEXIS 60613 (D. Md. 2006).  These opinions adopt a different interpretation of RESPA and hold that a plaintiff can have Article III standing without alleging or proving any overcharge.  These decisions, however, (which are not from the Sixth Circuit) should not be followed by this Court because they actually circumvent Article III standing requirements, disregard the codified purpose of RESPA, and misinterpret the language of RESPA.

Plaintiffs are expected to argue, based on *Kahrer* and *Robinson*, that they do not need to allege or prove an overcharge to have standing. Those decisions both sprouted from the reasoning of an unpublished opinion from the Southern District of Georgia, *Patton v. Triad Guarantee Insurance Corp.*, No. CV100-132 (S.D. Ga. October 10, 2002). Contrary to well-established law, the *Patton* reasoning in effect relieves RESPA claimants from the Article III requirements that the plaintiff must have suffered an "injury-in-fact," which is both "concrete and particularized" and "actual or imminent" and that there must be a causal connection between the injury and the conduct complained of. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).

*Kahrer* agreed with the *Patton* Court that Congress intended to "provide litigants with a bounty" to "encourage litigation" and even went so far as to say, "The purpose of a private right of action under RESPA is not to provide a remedy for individual consumers who think they are paying too much for settlement services and prefer litigation to the regulatory process." *Kahrer*, 418 F. Supp. 2d at 756. Dicta in *Robinson v. Fountainhead*, 2006 U.S. Dist. LEXIS 60613 (D. Md. No. WMN-03-3106) follows *Kahrer*. The *Robinson* Court dismissed the § 8(b) claim, but held that the § 8(a) claim could survive defendant's motion to dismiss, because plaintiff had "alleged an overcharge." 2006 U.S. Dist. LEXIS 60613 at *21. The case is distinguishable because, unlike the Carters here, the *Robinson* plaintiff alleged that the Title Insurance Binder Preparation fee was "not part of a filed rate" and the settlement fees were "in addition to" the fees that the title insurer was permitted to charge. Id. In dicta however the *Robinson* Court went on to adopt the *Kahrer* holding that actual individual injury was not required for RESPA standing. For the reasons that will be explained below, this Court should decline to follow the

*Kahrer-Robinson* line of cases that have sprouted from *Patton*, and instead follow the well-reasoned decisions in *Mullinax*, *Morales*, *Durr*, *Contawe*, and *Moore*.

> 1.    The Court Should Not Follow Decisions Circumventing Article III
> Standing Requirements.

The *Patton* Court envisions a world in which the Federal Courts serve a purpose that is expressly prohibited by Article III standing requirements.  If a state legislature intends to make its state courts the enforcers of consumer protection statutes by granting standing to litigants who have suffered no "injury in fact", the state courts perhaps can be used for that purpose.  But the United States Constitution prohibits the United States Courts from being used for that purpose. Congress has the legislative authority to enact laws to reform the title insurance system, and has the authority to invest enforcement power in HUD (or a federal prosecutor), but Congress cannot legislatively grant standing to private litigants who have no injury in fact.  It is well established that Congress may not legislatively eliminate or alter Article III standing requirements such as the injury-in-fact requirement.  *Warth*, 422 U.S. at 501; *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560-61 (5th Cir. 2001), *cert. denied* 534 U.S. 945, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001) ("Congress cannot change standing requirements").  As a result, even in actions to remedy alleged violations of statutory rights, the plaintiff must allege and prove an injury-in-fact that is particular to him that may be traced to defendant's action at issue in the lawsuit. *Lewis v. Knutson,*  699 F.2d 230, 236 (5th Cir. 1983).

The *Patton-Kahrer* line of cases would open the doors of the District Courts to "consumer protection" cases brought by class action lawyers seeking a "bounty", on behalf of litigants who have suffered no injury in fact.  The Framers intended Article III to preserve the United States Courts for a defined purpose.  The Magistrate Judge in *Kahrer* criticized the Seventh Circuit's reasoning as "flawed" when it said the plain meaning of "three times the

amount of any charge paid for such settlement service" means three times the overcharge; however, the *Durr* Court was right to protect the federal courts from actions by litigants who were not overcharged, and therefore lack standing.

> 2. *The Court Should Not Follow Decisions Disregarding The Codified Purpose of RESPA.*

The *Kahrer* Court, in concluding that other courts had followed a "flawed" analysis, was preoccupied with commentary found in the House Report preceding the 1983 amendment of § 8, and completely ignored the fundamental purposes of RESPA that was codified by Congress, and was not amended in 1983.  The commentary quoted by *Kahrer* includes:

> [T]he advice of the person making the referral may lose its impartiality and may not be based on his professional evaluation of the quality of service provided if the referrer or his associates have a financial interest in the company being recommended. In addition, since the real estate industry is structured so that settlement service providers do not compete for a consumer's business directly, but almost exclusively rely on referrals from real estate brokers, lenders or their associates for their business, the growth of controlled business arrangements effectively reduce the kind of healthy competition generated by independent settlement service providers.

*Kahrer*, 418 F. Supp. 2d at 754.  The court incorrectly relied on commentary to judicially change the codified purpose of RESPA.  The United States Supreme Court has said, "[u]nder established canons of statutory construction, 'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'"  *Finley v. United States*, 490 U.S. 545, 554 (1989), superseded on other grounds.  See also *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J. concurring) ("The greatest defect in legislative history is its illegitimacy.  We are governed by laws, not by the intentions of legislators.  As the court said in 1844: 'The law as it passed is the will of the majority of both

houses, *and the only mode in which that will is spoken is in the act itself....'"*)   (Emphasis in original.)

The text of the 1983 amendment did not amend or even mention the purpose of RESPA or § 2601.  As a result, the presumption according to the canons of statutory construction is that Congress noted the House Report's arguments about potential partiality and reduced competition but tacitly rejected those arguments by not amending § 2601 to expand the codified purpose of RESPA.  The un-amended statute itself provides:  "Congress finds that significant reforms in the real estate settlement process are needed to ensure that consumers throughout the Nation . . . are protected from *unnecessarily high* settlement charges *caused by* certain abusive practices . . . ."  12 U.S.C. § 2601(a), emphasis added.  The statute goes on to say, "[i]t is the purpose of [RESPA] to affect certain changes in the settlement process for residential real estate that will result . . . (2) in the elimination of kickbacks and referral fees that tend to *increase* unnecessarily the costs of certain settlement services . . . ."  12 U.S.C. § 2601(b), emphasis added.  There is nothing in the 1983 amendment itself that expresses a purpose to grant a private cause of action to consumers who have not been overcharged or suffered any injury in fact.  (Such a purpose would violate Article III standing requirements, as explained above.)

The *Patton* reasoning, that standing is created by impairment of the plaintiff's right to a competitive market, has also been rejected by the United States Supreme Court in the seminal filed-rate case.[5]  In *Keogh v. Chicago & Northwestern RY.*, *supra*, the Supreme Court reasoned:

> Keogh contends that his rights are not limited to the protection against unreasonably high or discriminatory rates…; that under the Anti-Trust Act he was entitled to the benefit of competitive rates; that the elimination of competition caused the increase in his rates; and that, as he is damaged thereby, he is entitled to recover.  The

---

[5]   Even if impairment of competitive right was enough to support standing, which it is not, the unrebutted evidence in this case is that the rates were commensurate with rates available through other title agencies in the Toledo area.  (Kajfasz Aff., ¶¶ 2-3.)

> instrument by which Keogh is alleged to have been damaged is
> rates approved by the Commission….
>
> All the rates fixed were reasonable and non-discriminatory.  That
> was settled by the proceedings before the Commission….  The fact
> that these rates had been approved by the Commission would not,
> it seems, bar proceedings by the Government.  It does not,
> however, follow that Keogh, a private shipper, may recover
> damages under § 7 because he lost the benefit of rates still lower,
> which, but for the conspiracy, he would have enjoyed.  There are
> several reasons why he cannot.
>
> A rate is not necessarily illegal because it is the result of a
> conspiracy in restraint of trade in violation of the Anti-Trust
> Act….  If the conspiracy here complained of had resulted in rate
> which the Commission found to be illegal because unreasonably
> high or discriminatory, the full amount of the damages sustained,
> whatever their nature, would have been recoverable in such
> proceedings….  [260 U.S. at 161-62, 43 S. Ct. at 49.]

Likewise, while HUD may have power to enforce RESPA irrespective of the rates filed and charged, once filed rates have been approved by the Ohio DOI, the rights of the consumer against a title insurer are measured by the filed rates.  In the absence of an overcharge, the consumer lacks standing under RESPA.  This Court should therefore preserve the codified intent of RESPA by rejecting the *Kahrer* interpretation that would grant standing to litigants who paid exactly the filed rates, or lower rates, without any overcharge.

>     3.      *The Court Should Not Follow Decisions Misinterpreting The*
>             *Language of § 8.*

The *Patton-Kahrer* line of cases also misinterpreted § 8(d)(2) of RESPA by incorrectly interpreting the clear antecedent of the demonstrative adjective "*such*" in the last clause of § 8(d)(2): "…three times the amount of any charge paid for *such* settlement service."  The word "such", when used as a demonstrative adjective to modify a singular noun (e.g., "settlement service"), has the same meaning as the legalese term "aforesaid."  DICTIONARY OF MODERN LEGAL USAGE 849 (2d ed. 1995).  To see the language in context, § 8(d)(2) of the Act provides:

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the *settlement service involved in the violation* in an amount equal to three times the amount of any charge paid for *such* settlement service.   [12 U.S.C. § 2607(d)(2), emphasis added.]

The interpretive question therefore is, what "settlement service" did the drafter refer to when it used the demonstrative adjective, "*such* settlement service" at the end of § 8(d)(2)?   The grammatical presumption is that the antecedent is a word or phrase that is in close proximity.  In § 8(d)(2) of RESPA there is only one sentence, and only one possible meaning for the adjective phrase "*such* settlement service."   The antecedent of "such" can only be the phrase, "service *involved in the violation*."

Yet the courts in *Patton*, *Kahrer* and *Robinson* all perpetuate a misinterpretation that ignores the antecedent of "such."   The error in *Kahrer's* reasoning is patent in the following statement:

> Moreover the language relied upon by the Court in Morales – that recovery may be had by the person "charged for the settlement service involved in the violation" – does not, in our view, suggest that only the overpayment is to be trebled.  Indeed, as previously discussed, the cited language does not speak to damages at all but merely describes the person to whom liability is owed….

*Kahrer* at 418 F. Supp. at 753.   The *Kahrer* Court simply missed the fact that the phrase "involved in the violation" does indeed "speak to damages" – it not only describes the person to whom liability is owed but also the same phrase is the clear antecedent of the adjective "such" and therefore also defines what charge is to be trebled:  the "charge for *such* settlement service."  The interpretive error in *Kahrer* was perpetuated by the *Robinson* Court when it quotes *Kahrer* in holding that § 8(d)(2) provides for "three times the amount of any charge paid for the settlement service" – tellingly, the court completely removed the word "such" from its holding.

*Robinson* at \*23.  Both *Kahrer* and *Robinson* misinterpret 8(d)(2) to effectively delete the word "such" and re-write the statute to say, "three times the amount of any charge paid for \*\*\*\* settlement service."  Their holding violates the cardinal principle of statutory interpretation, that all the words chosen by the legislature are presumed to have meaning.[6]

Therefore, this Court should endorse the *Morales* interpretation over *Kahrer,* not only because the *Kahrer* interpretation nullifies the clear antecedent of "such" but also because it assumes that Congress intended to circumvent Article III standing requirements by creating a cause of action for persons who have no concrete and particularized injury in fact.   Stated conversely, the *Morales* interpretation of the phrase "such settlement service" as referring only to "such" service that is "involved in the violation" preserves, and is entirely consistent with, Article III standing requirements.

---

[6]      The United States Supreme Court states the principle as follows:

> "It is our duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538-539, 99 L. Ed. 615, 75 S. Ct. 513 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152, 27 L. Ed. 431, 2 S. Ct. 391 (1883)); see also *Williams v. Taylor*, 529 U.S. 362, 404, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000) (describing this rule as a "cardinal principle of statutory construction"); *Market Co. v. Hoffman*, 101 U.S. 112, 115, 25 L. Ed. 782 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'"). We are thus "reluctant to treat statutory terms as surplusage" in any setting. *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698, 132 L. Ed. 2d 597, 115 S. Ct. 2407 (1995); see also *Ratzlaf v. United States*, 510 U.S. 135, 140, 126 L. Ed. 2d 615, 114 S. Ct. 655 (1994). [*Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 2125,150 L.Ed.2d 251, 259 (2001)]

## IV.    CONCLUSION

Chicago Title urges the court to adopt the reasoning of the courts in *Durr*, *Morales*, *Moore*, *Contawe* and *Mullinax*, each of which held that a plaintiff lacks standing unless there is an allegation and proof of an overcharge for a "service involved in the violation" of RESPA. The measure of damages under § 8(d)(2) of RESPA is three times the excessive amount paid as a result of the violation.  Plaintiffs herein paid no overcharge, suffered no damages, sustained no distinct and palpable injury-in-fact.  Accordingly, this court lacks jurisdiction over the subject matter, and the complaint should be dismissed under Civ. R. 12(b)(1) and plaintiffs' motion for class certification should be denied.

EASTMAN & SMITH LTD.


  /s/ Stuart J. Goldberg
Stuart J. Goldberg (0029469)
Barry W. Fissel (0021642)
One SeaGate, 24th Floor
P. O. Box 10032
Toledo, Ohio 43699-0032
Telephone:  (419) 241-6000
Fax:  (419) 247-1777
Email: sjgoldberg@eastmansmith.com
         bwfissel@eastmansmith.com

Attorneys for Defendant
Chicago Title Insurance Company

**PROOF OF SERVICE**

This is to certify that a copy of **Memorandum In Opposition To Plaintiffs' Motion For Class Certification And In Support Of Chicago Title Insurance Company's Motion To Dismiss** has been electronically filed with the court and mailed this 15th day of December, 2006, to John T. Murray, Esq. and James S. Timmerberg, Esq., Murray & Murray Co., L.P.A., 111 East Shoreline Drive, Post Office Box 19, Sandusky, Ohio 44871 and John L. Huffman, Esq., Mickel & Huffman, 520 Madison Ave., Suite 520, The Spitzer Building, Toledo, Ohio 43604, attorneys for plaintiffs; and to Richard H. Carr, Esq., Balk, Hess & Miller, Charter One Bank Building, 5744 Southwyck Boulevard, Toledo, Ohio 43614, attorney for Welles-Bowen Realty, Inc., Welles Bowen Title Agency, LLC, Welles Bowen Investors, LLC, and Welles Bowen Mortgage, Inc.

  /s/ Stuart J. Goldberg
Attorneys for Defendant
Chicago Title Insurance Company