IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERICK C. CARTER, *et al.*, | ) | Case No.: 3:05-CV-7427 |
| | ) | |
| Plaintiffs, | ) | JUDGE: JACK ZOUHARY |
| | ) | |
| v. | ) | **PLAINTIFFS' RESPONSE TO** |
| | ) | **DEFENDANTS' MOTIONS TO DISMISS** |
| WELLES-BOWEN REALTY, INC., *et al.* | ) | **AND REPLY TO DEFENDANTS'** |
| | ) | **MEMORANDUMS IN OPPOSITION TO** |
| Defendants. | ) | **CLASS CERTIFICATION** |

**I.     The "Filed-Rate Doctrine" Is Not Applicable Because the Plaintiffs Do Not Allege an Overcharge.**

The principles underlying the application of the filed-rate doctrine do not apply to this case. Summarizing the Supreme Court's treatment of the filed-rate doctrine, the Second Circuit noted that two principles lie at the heart of the filed-rate doctrine: "'first, that legislative bodies design agencies for the specific purpose of setting uniform rates, and second, that courts are not institutionally well suited to engage in retroactive rate setting.'"[1] Neither of these principles is applicable here.

By asking this Court to enforce RESPA's damages provisions, Plaintiffs are not challenging a filed rate, nor are they asking this Court to engage in retroactive rate setting. Instead, pursuant to 12 U.S.C. § 2607 [RESPA § 8], they are asking that the Court order the Defendants to pay a penalty for violating RESPA's prohibitions on kickbacks. The amount of the

---

[1] *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 19 (2d Cir.1994), quoting *Wegoland, Ltd. v. NYNEX Corp.,* 806 F.Supp. 1112, 1113 (S.D.N.Y.)

penalty, as determined by statute, is three times the amount of the charges that the Plaintiffs paid for their settlement services. While this penalty is determined by reference to charges for settlement services, including title insurance, this Court would *not* have to assess the reasonableness of the title insurance rates to make a damages award to the Plaintiffs.

In the past six months, the Northern District of Ohio has twice rejected the application of the filed-rate doctrine in claims against title insurance companies. In *Randleman v. Fidelity National Title Insurance Company,* No. 3:06CV7049, 2006 WL 3411529 (N.D.Ohio 2006), the plaintiffs alleged that the defendant was overcharging for title insurance, because it failed to provide a discount, as required by Ohio law, in instances in which a refinanced property had been the subject of title insurance within the ten years prior to the refinancing transaction. The court held: "The filed rate doctrine is inapplicable in this action. Plaintiffs are not challenging the reasonableness of the filed rate, but instead attempt to enforce a contract incorporating a filed rate."[2] Similarly, in this case, the Plaintiffs are not challenging the reasonableness of the filed rate, but instead, challenging the legality of the Defendants' kickback scheme.

In *Barnes v. First American Title Insurance Co.,* No. 1:06CV574, 2006 WL 2265553 (N.D.Ohio 2006), the plaintiffs alleged that the defendant did not inform them of an opportunity for a discount on their title insurance in conjunction with the refinancing of their mortgages. The defendant argued that the filed-rate doctrine fulfilled its duty of disclosure.[3] The court rejected the defendant's argument, noting that "the Court does not find the 'filed rate doctrine' creates a presumption of disclosure or satisfies the alleged duties owed Plaintiffs, in the absence of law to

---

[2] *Randleman v. Fidelity National Title Insurance Company,* No. 3:06CV7049, 2006 WL 3411529 at *8 (N.D.Ohio 2006)
[3] *Barnes v. First American Title Insurance Co.,* No. 1:06CV574, 2006 WL 2265553 at *7 (N.D.Ohio 2006)

the contrary."[4] Here, the filed-rate doctrine has no bearing on whether Chicago Title was paying kickbacks for referrals.

Because the Plaintiffs in this matter are not asking this Court to determine the reasonableness of title insurance rates, and because the amount the Plaintiffs paid for title insurance does not address the issue of whether the Defendants violated RESPA, the filed-rate doctrine has no bearing on the resolution of this matter.

## II.  The Plaintiffs Have Standing.

It is undisputed that a private cause of action exists for violations of 12 U.S.C. § 2607 [RESPA § 8]. The statute contains explicit language recognizing the existence of a private cause of action: "In any *private action* brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with reasonable attorney fees."[5] (Emphasis added.) The Seventh Circuit has acknowledged that Section 8 of RESPA creates a private cause of action.[6]  And the Sixth Circuit has concluded from the legislative history that Congress generally intended to create a private remedy for all RESPA violations.[7]

The Defendants contend that in the absence of an overcharge, the Plaintiffs cannot pursue a private cause of action against Defendants for operating a kickback scheme. But the Plaintiffs do not need to allege that they were overcharged to have standing. The Supreme Court has noted that the "actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . .'"[8]  For example, in *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), the two plaintiffs were "testers," that is,

---

[4] *Id.*

[5] 12 U.S.C. § 2607(d)(5).

[6] *Allison v. Liberty Savings,* 695 F.2d 1086, 1088 (7th Cir.1982) ("Section 10's silence on the subject of remedies is in sharp contrast to the remedial provisions of §§ 6 (now repealed), 8 and 9, which explicitly create private causes of action. *** We recognize that the private remedies provided in §§ 8 and 9 are extraordinary, utilizing a treble liquidated damage formula that a court could not invoke unless explicitly created by Congress.").

[7] *Vega v. First Federal Savings & Loan Association of Detroit,* 622 F.2d 918, 925 fn.8 (6th Cir.1980).

[8] *Warth v. Seldin,* 422 U.S. 490, 500 (1975).

individuals who, without an intent to rent or purchase a home or apartment, posed as renters or purchasers for the purpose of collecting evidence of unlawful steering practices.[9] Although the plaintiffs admittedly had no intention of renting an apartment or purchasing a house, the *Havens* court determined that they had standing under § 804 of the Fair Housing Act: "That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d)."[10] In making this determination, the court observed that Congress had "conferred on all 'persons' a legal right to truthful information about available housing."[11]

Although the plaintiffs in *Havens* did not suffer any economic losses, the court nevertheless recognized that they had standing to pursue their claim because Congress had determined that they had a right to truthful information about available housing. Similarly, in the context of real estate settlement services, Congress has determined that homebuyers have a right to settlement services free from kickbacks and unearned fees. This determination is expressed in RESPA § 8: "'The purpose of a private right of action under RESPA is not to provide a remedy for individual consumers who think that they are paying too much for settlement services and prefer litigation to the regulatory process. The purpose of the statute is to prevent certain practices that are harmful to all consumers by establishing that consumers have a right not to be subjected to those practices and providing both public and private remedies for violations of that

---

[9] *Havens Realty Corporation v. Coleman,* 455 U.S. 363, 373 (1982).
[10] *Id.* at 374.
[11] *Id.* at 373.

right.'"[12] The payment of kickbacks is one of the primary practices that Congress sought to prevent.

While the Defendants insist that the Plaintiffs must demonstrate that the charges for title insurance were "inflated," or "excessive,"[13] no such requirement exists in 12 U.S.C. § 2607(a) or (b).

§ 2607(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

§ 2607(b) provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

Neither section mentions excessive fees, inflated fees, or overcharges. Kickbacks are prohibited regardless of whether the purchaser of the title insurance policy pays an inflated fee or a discounted fee. As the Fourth Circuit has noted, Section 8 of RESPA was not intended to eliminate all settlement service overcharges: "Congress chose to leave markups and the price of real estate settlement services to the free market by 'consider[ing] and explicitly reject[ing] a system of price control for fees.'"[14] Instead, the purpose of RESPA was to prohibit kickback and referral fee arrangements.[15]

---

[12] *Kahrer v. Ameriquest Mortgage Company,* 418 F.Supp.2d 748, 756 (W.D.Pa.2006), quoting *Patton v. Triad Guaranty Insurance Corp.,* No. CV100-132 (S.D.Ga. October 10, 2002).
[13] Chicago Title's *Memorandum in Opposition to Plaintiffs' Motion for Class Certification,* p. 4.
[14] *Boulware v. Crossland Mortgage Corporation,* 291 F.3d 261, 268 (4th Cir.2002), quoting *Mercado v. Calumet Fed. Sav. & Loan Ass'n,* 763 F.2d 269, 271 (7th Cir.1985).
[15] *Boulware,* 291 F.3d at 268.

The Plaintiffs have alleged that Welles Bowen Title was a sham title agency,[16] that the fees Plaintiffs' paid to Welles Bowen Title in connection with the purchase of their home were unearned,[17] and that the referral scheme set up by the Defendants violates 12 U.S.C. § 2607.[18] Pursuant to the Supreme Court's holding in *Havens,* the language of RESPA § 8, and Congress's intent in enacting RESPA, these allegations are sufficient to provide the Plaintiffs with standing to maintain a private cause of action under § 2607.

### III. The Cases Cited by the Defendants in Support of Their Position Disregarded the Actual Language of Section 8 of RESPA.

The Defendants' contention that the Plaintiffs' claim is viable only in the event of an overcharge is largely premised on a line of cases originating with the decision in *Morales v. Attorney's Title Insurance Fund, Inc.,* 983 F.Supp. 1418 (S.D.Fla.1997). In determining that an overcharge was necessary to bring a claim under Section 8 of RESPA, *Morales* and its progeny disregarded the actual statutory language. The damages provision at issue is found at 12 U.S.C. § 2607(d)(2), which provides:

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

The *Morales* court acknowledged that under a "*literal approach* to this language, recovery under RESPA would be three times the full amount of a settlement charge, regardless of the nature or extent of the alleged RESPA violation."[19] (Emphasis added.) But the *Morales* court chose to

---

[16] Complaint ¶¶ 6-8, 38-45.
[17] Complaint ¶26.
[18] Complaint ¶9.
[19] *Morales v. Attorneys' Title Insurance Fund, Inc.,* 983 F.Supp. 1418, 1427 (S.D.Fla.1997)

disregard the literal language of the statute, and instead read the statute as providing for a damage award equal to three times the amount which violates RESPA.[20]

In *Moore v. Radian Group, Inc.,* 233 F.Supp.2d 819, 823 (E.D.Tex.2002), another decision cited by Defendants, the court quoted RESPA regulations stating that "'[t]he fact that the transfer of a thing of value *does not result in an increase in any charge* made by the person giving the thing of value is *irrelevant* in determining whether the act is prohibited.'" (Emphasis added.) The *Moore* court arbitrarily concluded that this language only applied to HUD enforcement actions, and did not apply to private causes of action. But no such distinction is made in 12 U.S.C. §2607.[21]

A treatise on the subject of federal regulation of real estate transactions concluded that the courts in both *Morales* and Moore misread RESPA.[22] In concluding that Section 8 of RESPA creates a private cause of action for three times the total amount paid for settlement services, the authors noted that:

> The approach of Section 8(d)(2) is twofold. By using the whole charge, no specific calculation of a referral fee or unearned fee must be made. This avoids a potentially difficult determination since the party receiving the unearned fee or referral fee may also have provided some services. Second, using the whole charge makes the potential recovery large enough to encourage individual parties to pursue violations of RESPA.[23]

Further support for the position that no overcharge is necessary for a private cause of action arising from a kickback scheme is found in two District Court cases decided in 2006.

---

[20] *Id.*
[21] *Moore v. Radian Group, Inc.,* 233 F.Supp.2d 819, 823-24 (E.D.Tex.2002)
[22] PAUL BARRON & MICHAEL A. BERENSON, FEDERAL REGULATION OF REAL ESTATE AND MORTGAGE LENDING, § 2:56 (4th ed. 2006) (attached at Appendix 1).
[23] *Id.* at § 2:56.

**IV.    In 2006, Two District Courts Concluded that a Plaintiff Need Not Allege an Overcharge to Have Standing to Bring a Private Cause of Action Pursuant to 12 U.S.C. § 2607.**

In *Kahrer v. Ameriquest Mortgage Company,* 418 F.Supp.2d 748 (W.D.Penn.2006), the District Court for the Western District of Pennsylvania rejected the defendant's contention that a failure to allege an overcharge for settlement services precludes a finding that a plaintiff has standing to bring a private cause of action under §8 of RESPA. In reaching this conclusion, the *Kahrer* court noted that "the literal language of § 2607(d)(2) provides for three times the amount of *any charge* paid for the settlement services which would appear to encompass all of the charges associated with the services provided rather than only treble the amount of any overpayment."[24] The *Kahrer* court also observed that § 2607 was amended in 1983,

> at which time the language entitling one to recover three times the 'thing of value' was replaced by the language at issue here which provides for liability for violating the statue in an amount equal to three times the amount of "any charge paid for such settlement services." Had Congress intended for liability to be limited to three times the overpayment or the "thing of value" as it had been since 1974 it would have had no need to amend the statute as it did.[25]

The 1983 amendment to RESPA arose from concerns over controlled business arrangements, whereby real estate settlement services were referred to affiliated entities.[26] RESPA had not previously addressed this problem.[27] "Under such circumstances, one entity is able to provide a benefit to its affiliate without the direct payment of a referral fee which, as stated in the 1982 House Committee Report, could result in harm to consumers beyond an increase in settlement charges as had been the concern when RESPA was first enacted."[28] This is an apt description of the facts of this case. Chicago Title has not paid a direct referral fee that can

---

[24] *Kahrer v. Ameriquest Mortgage Company,* 418 F.Supp.2d 748, 753 (W.D.Pa.2006).
[25] *Id.* at 754.
[26] *Id.*
[27] *Id.*
[28] *Id.*

8

be readily identified. Instead, it has created an affiliated business relationship that allows it to funnel kickbacks to the owners of Welles Bowen Realty in the form of profits that they receive from their ownership interest in Welles Bowen Title. The Defendants argue that because the kickback is buried in their affiliated business arrangement, the Plaintiffs do not have a cause of action. But this proposition is not supported by either the literal language of 12 U.S.C. § 2607, or the history of the legislation.

The reasoning of *Kahrer* was adopted by the District of Maryland in *Robinson v. Fountainhead Title Group, Corp.,* 447 F.Supp.2d 478, 489 (D.Md.2006). The *Robinson* court concluded that "injury in a RESPA case can be shown by harm other than allegations of overcharges."[29]

## V.    Conclusion.

RESPA provides for a private cause of action for the payment of kickbacks and referral fees in connection with real estate settlement services. The relevant statutory language does not require that the plaintiffs be overcharged for the service in order to have standing. In fact, the statute does not reference excessive fees or overcharges. The concern addressed by the statute is the adverse affects that unearned fees could have on consumers, including a potential lack of impartiality on the part of individuals providing referrals. HUD and private individuals have the same interest in enforcing the statute – preventing individuals who provide referrals to settlement services providers from receiving unearned fees.

Here, the Plaintiffs have alleged that Chicago Title paid unearned fees to the owners of Welles Bowen Realty in exchange for referrals, and that such an unearned fee was paid in connection with the real estate settlement services provided to the Plaintiffs. Congress clearly intended consumers of real estate settlement services to have a legal right to bring a cause of

---

[29] *Robinson v. Fountainhead Title Group,* 447 F.Supp.2d 478, 489 (D.Md.2006).

action for the payment of unearned fees in connection with settlement services provided to them. A reading of the plain language of 12 U.S.C. § 2607 shows that this right is in no way dependent on the existence of an overcharge or excessive fees. Consequently, the Plaintiffs have sufficiently alleged an injury under 12 U.S.C. § 2607 to establish their standing.

Finally, the Northern District of Ohio has twice ruled in the past year that claims against title insurance companies that do not challenge the reasonableness of the rates charged are not precluded by the filed-rate doctrine. Because the Plaintiffs have not challenged the reasonableness of the title insurance rates charged by the Defendants, the filed-rate doctrine has no application here.

> */s/ John T. Murray*
> John T. Murray (0008793)
> jotm@murrayandmurray.com
> James S. Timmerberg (0067499)
> jst@murrayandmurray.com
> MURRAY & MURRAY CO., L.P.A.
> 111 East Shoreline Drive
> Post Office Box 19
> Sandusky, Ohio  44871-0019
> Telephone:     (419) 624-3125 (direct)
> Facsimile:     (419) 624-0707
>
> John L. Huffman (0039658)
> mmickel783@aol.com
> Mickel & Huffman
> 520 Madison Ave., Suite 520
> The Spitzer Building
> Toledo, Ohio  43604-1351
> Telephone:  (419) 242-8461
> Facsimile:   (419) 242-6866
>
> Attorneys for Plaintiffs

CERTIFICATION

I hereby certify that on this 2nd day of January, 2007, the foregoing Plaintiffs' Response to Defendants' Motions to Dismiss and Reply to Defendants' Memorandums In Opposition To Class Certification was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ John T. Murray*
One of Plaintiffs' Attorneys